# UNITED STATES MORTGAGE COMPANY *v.* SPERRY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

No. 22. Argued January 31, February 3, 1890. — Decided February 2, 1891.

The power of a guardian, under the statute of Illinois relating to guardians
and wards, approved April 10, 1872, (Rev. Stats. Illinois, 1874, c. 64), to
mortgage the real estate of the ward is subject to these express restric-
tions: (1) that he obtain the leave of the county court, based upon
petition setting out the condition of the estate, the facts and circum-
stances on which the petition is founded, and a description of the prem-
ises to be mortgaged; (2) that the mortgage, if not in fee, must be for
a term of years not extending beyond the minority of the ward; and
(3) that the time of the maturity of the indebtedness secured by it
should not extend beyond the minority of the ward. It is, also, subject
to the implied restriction, controlling the discretion and power both of
the guardian and the county court, that the indebtedness secured by the
mortgage must arise out of, and have some necessary or appropriate
connection with, the management of the ward's estate.

Mortgages executed in 1872, 1873 and 1876, by a guardian in Illinois, with
the leave of the county court, to secure the payment of bonds given by
him for moneys borrowed to pay off existing encumbrances upon the
ward's real property and to improve such property by replacing thereon
buildings that had been destroyed by fire, are sustained as not invalid
under the above statute.

Such mortgages were not invalid because authorizing an absolute sale, and
not expressly recognizing the right of redemption after sale; for such
right of redemption exists, by statute, as a rule of property, whether
recognized or not in the mortgage.

The United States Mortgage Company, a corporation of New York, being
authorized by its charter to lend money on bond and mortgage on real
estate situated within the United States, or upon any hypothecation of
such real estate, or upon hypothecation of bonds or mortgages on such
real estate, for any period of credit, could contract in Illinois to lend
money there upon bond and mortgage of real estate, at nine per cent per
annum, (which the law of that state permitted,) although the highest
rate of interest permitted by the general laws of New York was seven
per cent, and although the special charter of the company provided that
no loan or advance of money should be made by it " at a rate of interest
exceeding the legal rate."

In Illinois, overdue coupons, so drawn as to be negotiable securities accord-
ing to the general commercial law, bear interest after maturity at the
rate of six per cent per annum. But an interest warrant signed by a guar-

dian, who has contracted to be exempt from personal liability for the principal debt, or for the interest thereon, practically payable out of particular funds, are not a security of that class, and do not bear interest after maturity.

Where a certain sum of money is due, and the creditor enters into arrangements with his debtor to take a less sum, provided that sum is secured in a certain way and paid at a certain day, but if any of the stipulations of the arrangement are not performed as agreed upon the creditor is to be entitled to recover the whole of the original debt, such remitter to his original rights does not constitute a penalty, and equity will not interfere to prevent its observance.

A guardian having obtained leave of the County Court to borrow the sum of $95,000 and mortgage the ward's estate to secure its payment, allowed the mortgagee, in the settlement of the loan, (but without the assent of that court,) the sum of $7219.27 in payment of interest on overdue coupons upon previous loans, and received from the mortgagee only $87,780.73. *Held,* (1) That this was not a contract, (within the meaning of the statute,) that the company should receive usurious interest, for no such contract had been attempted to be authorized by the county court; (2) That, as the allowance by the guardian of interest upon interest was under a mistaken view of the obligation of the coupons in that regard, the remedy was to treat the loan as one for only $87,780.73, making the calculation of interest at the contract rate upon that basis, and not to forfeit the interest upon the sum actually received by the guardian from the mortgagee.

Where a guardian, in Illinois, with leave of the county court, contracted on behalf of his ward's estate, for the repayment of money borrowed, with interest at nine per cent per annum, payable semiannually until the principal sum " shall be fully paid " — the principal debt maturing, as required by the statute, before the majority of the ward — interest is to be calculated, after the ward's majority, at the contract rate, and not at the statutory rate of six per cent. In such case, it is the right of the ward, immediately upon attaining full age, to pay off the debt, or, by agreement with the lender, obtain an extension of the time of maturity, and a less rate of interest.

Whatever may be the rate of interest contracted for in Illinois, after the debt is merged in a judgment or decree the contract ceases to exist, and the rate of interest upon the sum adjudged to be due, is thereafter controlled by the statute.

THIS appeal brought up for review a decree (*United States Mortgage Co.* v. *Sperry*, 24 Fed. Rep. 838, and *United States Mortgage Co.* v. *Sperry*, 26 Fed. Rep. 727) ordering the sale of certain real property in the city of Chicago, belonging to the appellee Henry W. Kingsbury, in satisfaction of the aggregate amount found to be due on three bonds given by

his guardian to the United States Mortgage Company, with the approval of the county court of Cook County — by which court the guardian was appointed — for moneys borrowed to be used in improving the ward's property and discharging certain encumbrances upon it. The bonds, all signed by the guardian, were payable, respectively, May 1, 1882, April 1, 1883, and December 1, 1883, and each one was secured by mortgage of distinct parts of the real estate directed to be sold. The mortgages bore date, respectively, July 10, 1872, April 1, 1873, and December 1, 1876, and provided, as did the bonds, that upon default, continuing for one month, in the payment of interest as stipulated, the principal sum, together with all arrearages of interest thereon, should, at the option of the Mortgage Company, become immediately due and collectible. Default having occurred and continued for one month in the payment of interest on each of the bonds, the company, on the 2d of November, 1877, exercised that option, declared the principal and all arrearages of interest to be immediately payable and collectible, and within a few days after that date brought the present suit for foreclosure.

The circumstances under which the bonds, coupons and mortgages were executed were as follows:

On the 5th of July, 1872, Anson Sperry, guardian of Kingsbury, presented his petition, properly verified, to the county court of Cook County, showing that the real property of the minor was subject to encumbrance by mortgages to the amount of about $78,500; that the debts secured by some of them were due, and the holders demanding payment; that the holders of other mortgage debts, soon to mature, were willing to accept payment and to assign or cancel their mortgages; that upon all of the mortgages considerable accumulations of interest were due and unpaid; that a portion of the real estate belonging to the minor consisted of lot six and a part of lot five, in block twenty-five of the original town of Chicago, and that the buildings formerly thereon were destroyed by fire, October 9, 1871; that the premises constituted a very large part of his estate in point of productive value, were centrally located in Chicago, and, before the destruction of the build-

ings thereon, yielded large rents; that in the judgment of all persons interested in the estate and in its proper management, the buildings should ·be restored, and the property made productive; that no money had come to the guardian's hands with which to liquidate the existing mortgage debts or the accumulated interest thereon; that the rents from the estate being insufficient for that purpose, it was necessary that provision be made to prevent the foreclosure of the mortgages; that there was no money of the estate to be applied in restoring the buildings; that the cost of constructing suitable buildings upon the premises would be about $100,000; and that for the purpose of funding, consolidating and paying off the mortgage debts and constructing proper buildings, it would be necessary to borrow about $200,000.

The prayer of the guardian was that he be authorized to negotiate, for the purposes stated, a loan of not exceeding $200,000, and to pay usual and reasonable commissions and brokerage therefor, upon such terms and for such time as shall be approved by the court and allowed by law; the mortgage to rest upon certain premises, belonging to the minor, the metes and bounds of which were given in the petition of the guardian. The authority asked for was given, and a loan in gold for $175,000 was negotiated with the appellant. The bonds given therefor were made payable, in gold, May 1, 1882, with interest (evidenced by coupons signed by the guardian) in like coin at the rate of nine per cent, payable semi-annually, until the principal was paid; and the mortgage to secure the payment of principal and interest was submitted to and approved by the county court. The order of approval was made August 6, 1872.

Subsequently on the 4th of September, 1872, the guardian filed in the county court an inventory of the real and personal estate of the minor, which recited all the mortgages upon his property, including those executed before he inherited it, and the above mortgage for $175,000. This inventory was examined, approved and ordered to be recorded. A subsequent inventory filed by him December 26, 1872, showed a balance of receipts in his hands of $496.98, and a cash balance of

$30,026.71 unexpended from the loan that had been authorized by the court. In that report he said: "That upon consultation with all parties interested and with persons of sound discretion and without interest, it is thought best to construct on the north one hundred feet of lot six, fronting on the alley north of Randolph street, and being the north end of Randolph street lot, a public hall. There are no halls of the character intended to be built north of 22d street and east of the south branch of the Chicago River, and the large number of conventions, meetings, concerts, readings and other assemblages of a like character requires proper accommodations. The ground proposed to be used is useless for almost any other purpose, but is a source of large expense. The ground is eighty feet wide by one hundred feet deep, and a hall with seating room for fifteen to eighteen hundred people can be built at a cost of about $50,000, from which an annual income of $10,000, at least, can be realized. An entrance can be made through the Clark street building, and the basement thereunder will rent for the purposes of an eating house at a fair rent. All the property belonging to said estate is liable to the dower right of Mrs. Jane C. Kingsbury of one-third of the net income thereof, and to the dower right of Mrs. Eva Lawrence of two-ninths of said net income." This report was examined, approved and recorded.

On the 3d of March, 1873, the guardian presented another petition to the county court, showing that he had used $68,643.80 out of the above loan in paying off old mortgages on the minor's estate, leaving a balance of $126,002.58, which he estimated would all or nearly all be required in the construction of buildings then being erected on the Randolph-street front of lot six in block thirty-five, and the building on that part of lot five, in the same block, owned by the minor. His petition also showed that the rear part of lot six had upon it, before the fire of 1871, a public hall or theatre; and that upon careful consideration, and after consultation with judicious, competent persons, it was best for the estate to erect a public hall upon the rear of that lot, having its front on Clark street, and to be used for concerts, lectures, readings, etc. It

further appeared that, in addition to the old mortgages previously described, there were two other encumbrances, that were either in whole or in part charges upon the estate of the infant, and which amounted to $15,000 and interest ; and that the money in his hands, of the former loan, would be needed for the buildings on lot six, and more was needed to erect the building on the rear of that lot and to pay off said encumbrances.  His petition showed " that the entire estate of the said Henry W. Kingsbury consists of real estate nearly all situate in the City of Chicago, and the only revenue and income of said estate to meet the various charges and encumbrances upon it and its expenses and taxation must be derived from the rental of said real estate ; that no revenue can, in his judgment and that of judicious persons with whom he has consulted, be derived from the said rear portion of said lot six (6) unless the same be improved ; that the said premises have heretofore, as thus improved, been largely productive and profitable until the said improvements were destroyed by fire, and it is believed that, if judiciously built upon, as proposed, they would be again equally productive and profitable, if not more so."   He, therefore, asked authority to negotiate an additional loan of $75,000 in gold coin or the equivalent thereof in paper currency of the United States, paying usual and reasonable commissions and brokerage therefor, upon such terms and for such time as the court would approve and the law allowed, and to secure the same by mortgage upon certain described premises.

The prayer of that petition was also granted, and an order was made authorizing a further loan of $75,000 in gold coin, or its equivalent in paper currency, upon the terms stated in the petition.   Under this order the mortgage of April 1, 1873, was executed to secure the payment of $70,000 in gold coin borrowed by the guardian from the Mortgage Company, and for which amount the guardian gave his bond maturing April 1, 1883, payable with interest (evidenced by coupons signed by him as guardian) at the rate of nine per cent per annum, payable half-yearly in like coin, until the principal sum was fully paid.   This mortgage did not seem to have been formally

presented to the court for examination, but the fact of its execution was brought to its attention in the guardian's reports from time to time of the condition of the estate, and was recognized.

On the 12th of October, 1876, the guardian — who, at that time, was Herman G. Powers — presented to the county court a petition showing a large indebtedness against the minor's estate, arising in part from the erection of buildings upon the lots before referred to, and including $51,987.04 in gold, which he stated was due the United States Mortgage Company for unpaid interest up to August 15, 1876. For the purpose of discharging said indebtedness, he asked authority to make an additional loan in gold of a sum not exceeding $95,000, or its equivalent in paper currency of the United States, paying interest thereon at the rate of nine per cent per annum in gold. The authority asked was granted, and the amount above named having been negotiated with the appellant, he executed a mortgage, December 1, 1876, to secure the payment of that sum in gold coin on the 1st of December, 1883, with interest (evidenced by coupons signed by him as guardian) payable half-yearly in like coin, at the rate of nine per cent per annum until the principal sum was paid; the guardian giving his bond for the principal sum, and coupons for the interest. The mortgage, bonds and coupons having been submitted to the court, were examined and approved.

Upon the basis of the master's report the aggregate amount due on the 15th day of December, 1885, was $343,399.96. This amount was reduced by the final decree to the sum of $221,727.64, making a difference against the company, at that date, of $121,672.32.

The following extract from the final decree showed how this result was reached:

"And the court finds that there was due the complainant, October fifteenth, 1884, of principal and interest on the loans made by said Anson Sperry as guardian, calculating interest at nine per cent per annum from the time to which the interest on said loans had been paid or funded and secured by the mortgage executed by the said Powers, the following sums, to wit:

"Principal of first loan . . . . . . . . . $175,000 00
"Interest at nine per cent from November first,
    1876, to October fifteenth, 1884 . . . . . 125,343 75
"Principal of second loan . . . . . . . . 70,000 00
"Interest at nine per cent from April first, 1877,
    to October fifteenth, 1884 . . . . . . . . 47,512 50
    "Making a total of . . . . . . . . $417,856. 25
"And the court finds and the master's report
    shows payments to the complainant, made
    October fifteenth, 1884, and previously, to
    the amount of . . . . . . . . . . . $302,568 17
"And that said Powers improperly paid to said
    complainant the sum of $370.57 as interest
    on coupons secured by said 1st and 2d mort-
    gages, which sums should be charged to
    complainant . . . . . . . . . . . 370 57
    "Total payments . . . . . . . . . $302,938 74
"Leaving a balance due October fifteenth, 1884,
    on said first two loans of . . . . . . $114,917 51
"The interest upon which at nine per cent to
    December fifteenth, 1885, is . . . . . . 12,066 33
    "Leaving a balance due on the first two
      loans at that date . . . . . . . $126,983 84
"And the court finds that the principal of said
    third mortgage made by Herman G. Powers
    should be reduced by deducting the amount
    of interest on coupons included therein, or
    $7219.27, leaving . . . . . . . . . $87,780 73
"And that the complainant should be allowed
    as interest thereon to December fifteenth,
    1885, the sum of . . . . . . . . . . 6,963 07
    "Making a total of principal and interest
      due on said mortgage of . . . . . $94,743 80
"Which, added to the sum due on said first two
    mortgages, makes a total of . . . . . . $221,727 64
due the complainant on all three of said mortgages December
fifteenth, 1885."

The calculation of interest was made to December 15, 1885, because on that day the court below filed an opinion sustaining the defendant's exceptions to the master's report so far as it allowed, (1) interest on coupons after their maturity; (2) interest on coupons of the first and second loans included in the third mortgage; and (3) interest on the third loan at the rate of nine per cent.

The assignment of errors questioned the correctness of the ruling on the exceptions, but made no distinct point as to interest at the contract rate having been calculated to December 15, 1885, rather than to date of the entry of the final decree passed on the 23d of March, 1886.

*Mr. John J. Herrick,* (with whom was *Mr. Wirt Dexter* on the brief,) for appellant.

*Mr. Lyman Trumbull* and *Mr. John P. Wilson* for appellees.

I. Was it competent for the guardians of Henry W. Kingsbury, an infant of tender years, to borrow, July 10, 1872, $175,000; April 3, 1873, $70,000; and, December 1, 1876, $95,000, all in gold, at nine per cent, semi-annual interest payable in gold, with commissions of two and one-half per cent added, and secure the same by mortgages on the infant's entire estate, for the purpose of erecting buildings upon some of his vacant lots, when his estate, before any of the loans were made, was yielding an annual income, from rentals, of $26,444.61, and the vacant lots could have been rented for six or eight thousand dollars besides, an amount more than sufficient to take care of the estate, and provide for and educate the minor?

In October, 1876, the successor of Sperry, as guardian, with all the advantages of the increased income from buildings erected, reports that there is past due interest to August 15, 1876, on the two previous mortgages amounting to $51,987.04; that the lands mortgaged had been sold for taxes, that the amount due for tax certificates was $10,150.78, and for other taxes about $9000.

The record demonstrates the utter failure of the speculation of borrowing money to erect buildings upon the minor's estate, the result of which is this foreclosure suit.

Had the county court power to authorize the guardian to borrow money for this speculation, which has turned out so disastrously, and to mortgage his ward's real estate for payment of the borrowed money ?

Counsel for appellant contend it had, and that the Supreme Court of Illinois has decided this precise question in the case of *Kingsbury* v. *Powers*, 131 Illinois, 182, involving the payment of interest by Powers as guardian upon these very mortgages. If the Supreme Court of Illinois has so decided, it is conceded that the decision involving the construction of an Illinois statute would be followed by this court. But has the Illinois court so decided? We think a critical examination of the decision referred to will show, that, so far from having so decided, the court carefully avoided making any such decision. Now, when a bill is filed for the foreclosure of these mortgages, the authority of the probate court to sanction, and of the guardian to execute them, is for the first time submitted for adjudication. That their validity may be questioned in this foreclosure proceeding, has been expressly decided in the case of *Kingsbury* v. *Sperry*, 119 Illinois, 279.

It follows from these decisions, that, in this foreclosure proceeding, the appellee is entitled to raise every question which he could have raised if this case had come before the Circuit Court on a writ of error to review the action of the county court in granting leave to borrow the money and execute the mortgages.

The county court had no power to authorize money to be borrowed for the purpose of erecting buildings, and the infant's estate to be mortgaged as security for repayment. A court of chancery had no such power at the common law. *Rogers* v. *Dill*, 6 Hill, 415; *Williamson* v. *Ball*, 8 How. 556; *Genet* v. *Tallmadge*, 1 Johns. Ch. 561; *Taylor* v. *Phillips*, 2 Ves. Sen. 23.

It has, however, been held in Illinois, that a court of chancery has power, in the absence of a statute, to direct a sale of

a minor's real estate when it is necessary for his support; but the Illinois courts are not so far in conflict with all other authorities as to have held that such power exists at the common law when no necessity is shown. The cases where a court of chancery, whether acting by virtue of its common law powers or of statutes, has authorized a mortgage of the infant's estate, are few, and, it is believed, none can be found where such mortgage secured money borrowed for the purpose of making improvements. Wherever an infant's estate has been encumbered or sold, whether at common law or by force of statutes, it has been under the pressure of a demonstrated necessity. *Cummins* v. *Cummins*, 15 Illinois, 33. No case cited by counsel, or by the text writers cited, upholds the power to authorize encumbering the infant's estate to raise money for improvements.

The Illinois statute in reference to guardians has not conferred on the county court in all respects as to an infant's estate the common law powers of a court of chancery. *Bond* v. *Lockwood*, 33 Illinois, 213.

It is only for the purposes for which the statute confers the authority, that the county court has jurisdiction to authorize a mortgage of an infant's estate. *Kingsbury* v. *Sperry*, above cited, at p. 283. That the general assembly did not intend to confer a limitless power on the county court, is apparent from the many provisions in the guardian and ward act of fifty sections, directing what shall be done with the ward's money, how it shall be used, applied and invested. Why all these provisions, if the county court may, in its discretion, authorize the guardian to borrow money to be used for any and all purposes, and mortgage the infant's real estate for its repayment?

The original and all the petitions by the guardian to the county court were for leave to borrow money, and to mortgage the ward's realty for its payment. They were not for leave to mortgage to secure an indebtedness already existing, but to create a debt by borrowing money, and then secure it by a mortgage. The statute confers on the county court no jurisdiction or authority to sanction such a proceeding. It is

only to secure an indebtedness of the minor, or of his estate, that a mortgage of his real estate is authorized in any case. A county court had no jurisdiction to authorize a mortgage of the ward's realty, to secure Sperry's debt; hence the mortgage in this case is void. The same objections apply to each of the other mortgages. The case of *Payne* v. *Stone*, 7 Sm. & Marsh. 367, was analogous in many of its features to the present case. The power of the guardian, by leave of the county court, to mortgage the real estate of the ward, does not include the power to borrow money.

The law is equally clear that the county court, even if, under any circumstances, it had power, under the statute, to authorize these mortgages, committed error in doing so without proof that such course was necessary for the preservation of the minor's estate, or, at the very least, proof that the estate would be benefited thereby. *Loyd* v. *Malone*, 23 Illinois, 43; *S. C.* 74 Am. Dec. 179.

II. The Circuit Court did not err in refusing to allow interest on overdue interest. *Cromwell* v. *Sac County*, 96 U. S. 51; *Ohio* v. *Frank*, 103 U. S. 697; *Leonard* v. *Villars*, 23 Illinois, 377; *Barker* v. *International Bank*, 80 Illinois, 96; *Thompson* v. *Hoagland*, 65 Illinois, 310; *McFadden* v. *Fortier*, 20 Illinois, 509; *Harper* v. *Ely*, 70 Illinois, 581; *Humphreys* v. *Morton*, 100 Illinois, 592; *Lexington* v. *Butler*, 14 Wall. 282; *Broughton* v. *Mitchell*, 64 Alabama, 210; *Wilson* v. *Davis*, 1 Montana, 183; *Doe* v. *Warren*, 7 Maine, 48; *Union Bank* v. *Williams*, 3 Coldwell, 579; *Stokely* v. *Thompson*, 34 Penn. St. 210; *Mason* v. *Collender*, 2 Minnesota, 302; *S. C.* 72 Am. Dec. 102; *Denver Brick M'f'g Co.* v. *McAllister*, 6 Colorado, 261; *Force* v. *Elizabeth*, 28 N. J. Eq. 403; *Connecticut* v. *Jackson*, 1 Johns. Ch. 13; *S. C.* 7 Am. Dec. 471; *Ferry* v. *Ferry*, 2 Cush. 92.

III. The third mortgage was usurious, and no interest should have been allowed thereon. *Harris* v. *Bressler*, 119 Illinois, 467; *Van Benschooten* v. *Lanson*, 6 Johns. Ch. 13; *S. C.* 10 Am. Dec. 333; *Peddicord* v. *Connard*, 85 Illinois, 102; *Leonard* v. *Patton*, 106 Illinois, 99; *Loveland* v. *Ritter*, 50 Illinois, 54; *Farwell* v. *Meyer*, 35 Illinois, 40; *Payne* v.

*Newcomb*, 100 Illinois, 611; *Amundson* v. *Ryan*, 111 Illinois, 506.

IV. The indebtedness due appellant after Kingsbury attained lawful age drew interest only at six per cent. *Brewster* v. *Wakefield*, 22 How. 118; *Holden* v. *Trust Company*, 100 U. S. 72; *Phinney* v. *Baldwin*, 16 Illinois, 108; *S. C.* 61 Am. Dec. 62.; *Etnyne* v. *McDaniel*, 28 Illinois, 201.

V. In no event should interest be allowed on coupons maturing after November 2, 1887.

VI. Appellant was prohibited by its charter from taking more than seven per cent interest. *Farmers' and Mechanics' Nat. Bank* v. *Dearing*, 91 U. S. 29; *Burnhisel* v. *Firman*, 22 Wall. 170; *Turner* v. *Calvert*, 12 S. & R. 46; *Ewing* v. *Toledo Savings Bank*, 43 Ohio St. 31; *Farwell* v. *Hanover Savings Fund Society*, 40 Ohio St. 274.

MR. JUSTICE HARLAN, after stating the case as above, delivered the opinion of the court.

1. In the court below one of the contentions of the appellee Kingsbury — who reached his majority before the final decree, and became a defendant — was, that the guardian had no authority to borrow moneys for the purpose of erecting buildings to be rented, or to mortgage the minor's property to secure the payment of moneys borrowed for that or any other purpose; that no such authority could be conferred by the county court; and, consequently, that the mortgages were absolutely void. The Circuit Court did not concur in this view. It held the mortgages to be valid instruments to secure the payment of whatever amount was legally and justly due upon an accounting. The reduction of the amount reported arose from the disapproval of the mode in which the master computed interest on the several debts.

The contention that the mortgages were unauthorized by law is renewed in this court; and, although the Mortgage Company alone has prosecuted an appeal, Kingsbury insists that even if the mode adopted by the Circuit Court for computing interest was erroneous, the decree cannot be reversed,

if this court finds that the mortgages were void for want of
authority in the guardian to execute them. As the present
appeal necessarily brings before us the defence based upon
the alleged invalidity of the mortgages.—a defence that ques-
tions the right to a foreclosure for any amount — it is neces-
sary to inquire at the outset whether, by the law of Illinois,
the guardian had authority to mortgage the real estate of his
ward to secure the payment of moneys borrowed to be used
in improving the ward's property or to discharge existing
mortgages upon it.

By the constitution of Illinois, county courts are courts of
record with original jurisdiction in the appointment of guar-
dians and the settlement of their accounts, and with such other
jurisdiction as may be given by general law. Art. V. sec. 18.
And by the act of the general assembly relating to guardians
and wards, approved April 10, 1872, Rev. Stats. Illinois, 1874,
c. 64, it is provided (§§ 2, 4) that a guardian shall have, under
the direction of the county court, " the custody, nurture and
tuition of his ward, and the care and management of his es-
tate;" although, under some circumstances, the custody of the
person, as well as the education of the minor, would be com-
mitted to the father or mother. By the same statute it is pro-
vided (§§ 19, 20) that the guardian "shall manage the estate of
his ward frugally and without waste, and apply the income
and profit thereof, so far as the same may be necessary, to the
comfort and suitable support and education of his ward," and
"shall educate his ward." §§ 19, 20. It is made his duty
by § 22 "to put and keep his ward's money at interest, upon
security to be approved by the court, or invest the same in
United States bonds, or other United States interest-bearing
securities;" all loans in amounts exceeding $100 to be upon
real estate security, but no loan to be for a longer time
than three years, nor beyond the minority of the ward. He
"may [§ 23] lease the real estate of the ward upon such terms
and for such length of time, not extending beyond the minor-
ity of the ward, as the county court shall approve." So,
also, (§ 24) he "may, by leave of the county court, mortgage
the real estate of the ward for a term of years not exceeding

the minority of the ward, or in fee; but the time of the maturity of the indebtedness secured ·by such mortgage shall not be extended beyond the time of the minority of the ward." But (§ 25) "before any mortgage shall be made, the guardian shall petition the county court for an order authorizing such mortgage to be made, in which petition shall be set· out the condition of the estate, and the facts and circumstances on which the petition is founded, and a description of the premises sought to be mortgaged." The statute, also, declares (§ 26) "that foreclosures of mortgages authorized by this act shall only be made by petition to the county· court of the county where letters of guardianship were granted, or in case of non-resident minors, in the county in which the premises, or some part thereof, are situated, in which proceeding the guardian and ward shall be made defendants; and any sale made by virtue of any order or decree of foreclosure of such mortgage may, at any time before confirmation, be set aside by the court for inadequacy of price, or other good cause, and shall not be binding upon the guardian or ward until confirmed by the court;" and (§ 27) "that no decree of strict foreclosure shall be made upon any such mortgage, but redemption shall be allowed, as is provided by law, in cases of sales under executions upon common law judgments." Power is given to the county court (§ 28) to order "the sale of the real estate of the ward, for his·support and education, when the court shall deem it necessary, or to invest the proceeds in other real estate, or for the purpose of otherwise investing the same," upon the verified petition of the guardian (§ 29) filed at least· ten days before the .commencement of the term of court at which the application shall be made, and· setting forth "the condition of the estate and the facts and· circumstances on which the petition is· founded." ·Of the application to sell, notice must be given (§ 31) by publication to all persons concerned, and tried "as in other cases in chancery." Any order made or judgment rendered under the act may be reviewed upon appeal to the Circuit Court (§ 43), the appellant giving such bond and security as the court directs. The statute contains many other sections, but those

referred to are all that have any bearing, directly or indirectly, upon the questions raised in the present case.

It is clear, from the statement of the proceedings in the county court, that in each instance of borrowing, the guardian's petition for an order authorizing the loan and mortgage set out the condition of the estate, the facts and circumstances on which it was founded and a description of the premises sought to be mortgaged. And the maturity of the debt, incurred by borrowing, did not extend beyond the minority of the ward. §§ 24, 25. The petition, in form, met all the requirements of the statute.

The question of the validity of the mortgages is within a very narrow compass, depending, as it does, upon statutory provisions so clearly expressed as to leave but little room for construction. The statute by secs. 4 and 19 commits to the guardian, under the direction of the county court, the care and management of the ward's estate, and makes it his duty to manage it frugally and without waste, applying the income and profit therefrom, so far as may be necessary, to the comfort and suitable support, as well as to the education of the ward. It is also made his duty to put and keep the ward's money at interest. Now, it is clear that the proper management of the ward's estate involves something more than his maintenance and education. It involves the payment of taxes, and may involve the payment of assessments, insurance premiums and mortgages, as well as the repairing of buildings; and, in order that the interests of the ward may be guarded and promoted in every emergency arising in the management of his estate, the statute empowers the guardian, with the leave of the county court, to lease, mortgage or sell his real property. While the statute (§ 28) defines the objects for which his real property may be sold, it is silent as to the circumstances under which the guardian may lease or mortgage it. Nevertheless, the power to lease or mortgage is expressly given. For what purposes may the power to mortgage be exerted? One of the learned counsel for Kingsbury insists that the guardian cannot borrow money for any purpose or under any circumstances. If this view be sound, it

would result that he could not borrow money to pay taxes, or insurance premiums, or for necessary repairs upon buildings, or to discharge mortgages, even when that mode of raising money is absolutely required by the best interests of the estate. We cannot suppose that any such result was within the contemplation of the legislature when it imposed upon the guardian the duty to care for and manage the ward's estate, under the direction of the county court, and empowered him, with the leave of that court, to mortgage real property for debts maturing on or before the ward's majority. If the guardian could not, with such leave, borrow money upon mortgage of real estate to discharge existing encumbrances, pay taxes, insurance premiums and assessments, or to make necessary repairs, in what mode could it be raised by him? If he could only sell, with the leave of the court, real property for the particular purposes named in the 28th section — namely, for the support and education of the ward, or to invest the proceeds in other real estate, or to invest them otherwise — in what way, when he was without sufficient income from the estate, could money be raised to discharge existing mortgages, pay taxes, insurance premiums, assessments or to make repairs? The answer to this question suggests that the construction sought to be placed upon the statute is too narrow. We are of opinion that the legislature intended to commit the whole subject of mortgaging the real estate of the ward, primarily, to the guardian, subject to certain restrictions, some of which are expressed in the statute, while others are necessarily implied from its provisions. The express restrictions are: First, that he obtain the leave of the county court, based upon petition setting out the condition of the estate, the facts and circumstances on which the petition is founded, and a description of the premises to be mortgaged; second, that the mortgage, if not in fee, must be for a term of years not extending beyond the minority of the ward; third, that the time of the maturity of the indebtedness secured by it should not extend beyond the minority of the ward. §§ 24, 25. The implied restriction, controlling the discretion and power both of the guardian and the county court, is, that the

indebtedness secured by the mortgage must arise out of, and have some necessary or appropriate connection with, the management of the ward's estate. We have seen that the express restrictions, imposed by the statute, were all observed in the proceedings in the county court. It is equally clear that the debts created by the borrowing of money from the Mortgage Company arose out of and had connection with the proper management of the ward's estate. When the buildings upon Kingsbury's lots were destroyed by fire in 1871, the question naturally occurred whether it was prudent or for the benefit of the ward that the lots be sold and the proceeds invested in other real estate or in securities, or whether the buildings destroyed should not be replaced, and other lots belonging to the ward improved. It was the duty of the guardian, as well as of the county court when informed of the situation, to consider those questions, because they were involved in the management of the estate. If the guardian had not taken such action as his best judgment indicated, he would have been neglectful of his duty. At any rate, these questions were, in the first instance, for him and for the county court; and their determination of them in the mode prescribed by the statute was subject to be reviewed, upon appeal, in the Circuit Court.

This interpretation does not recognize, as belonging to the guardian and to the County Court, any larger powers than they have by the express words of the statute in respect to the disposition by sale of the real estate of the ward. Before the fire of 1871 it was competent for him, with the leave of the county court, to sell even the improved property of the ward in Chicago for the purpose of investing the proceeds in other real estate, improved or unimproved, or of otherwise investing them. For like purposes, and with the leave of that court, he could have sold the lots after the buildings were destroyed by fire. But no such sales should have been made if they could have been avoided, nor if, in the judgment of the guardian and of the county court, looking to the probable future of Chicago, it was best to replace the buildings destroyed and to improve lots not theretofore occupied by buildings. It

is asked, why did not the guardian lease the property, and thus avoid the expense of rebuilding? As leases could not extend beyond the minority of the ward, it may be that the property could not have been advantageously leased for a short term of years, or a sufficient amount raised in that mode to meet the unpaid and constantly accruing taxes as well as the existing mortgages upon the property about to be foreclosed. Be this as it may, and independently of these considerations, it is sufficient to say that the question of lease, mortgage or sale was, under the statute, for the determination of the guardian and the county court. The power to sell real estate for the purpose of investing the proceeds in other real estate, improved or unimproved, or of lending them upon real estate security, is not, looking at its nature or the consequences to result from its exercise, less important than the power to borrow money, secured by mortgage, to improve the ward's real property. If the former may be determined by the guardian and the county court, as the statute expressly declares it may be, we do not feel at liberty to hold that the latter may not be also determined by them, especially as the power to mortgage is given without any restriction other than such as is necessarily implied.

It is also suggested by counsel for Kingsbury that if a guardian may, under any circumstances or for any purpose, borrow money and mortgage the real property of the ward to secure its payment, he can only do so when thereunto authorized by the Circuit Court of the proper county exercising the usual powers of a court of chancery. We cannot perceive anything in the statute to sustain this interpretation. It may be that the Circuit Court of the proper county, in virtue of its general equity jurisdiction, and in a suit brought in behalf of the ward by the guardian, could have authorized the latter to borrow money to improve the ward's real property, and give a mortgage to secure payment of the amount borrowed. It was held in *Smith* v. *Sackett*, 5 Gilman, 534, 545, that "the jurisdiction of the court of chancery to order the sale of the whole, or a portion of the estate of an infant, or to order it to be encumbered by mortgage whenever the interest of the infant demands

it, will not be denied, whether that interest be of a legal or equitable nature." And in *Allman* v. *Taylor*, 101 Illinois, 185, 191, the jurisdiction of the Circuit Court sitting in equity, in a suit brought in the name of the infant by his guardian, to order the sale of the minor's unimproved lands in Illinois, that the proceeds might be applied in removing encumbrances on his improved land in Indiana, was sustained upon the principle announced in *Smith* v. *Sackett*. See also *Frith* v. *Cameron*, L. R. 12 Eq. 169. But it does not follow that the statute of 1872 did not confer like jurisdiction upon the county court. That court, we have seen, is, by the state constitution, a court of record and of original jurisdiction, in the appointment of guardians, and the settlements of their accounts. It has, also, by the statute, general authority over the matters committed to it by the statute of 1872.

It is further contended that, if the county court could authorize the execution of mortgages to secure the payment of money borrowed, the mortgages in suit are not of that class, because the act of 1872 provides that the mortgages executed under it shall be foreclosed only upon petition in the county court, and that no strict foreclosure shall be made, but that redemption shall be allowed as is now provided by law in cases of sales under execution upon common-law judgments, (§§ 26, 27); whereas, the mortgages executed by Kingsbury's guardian authorize an absolute sale, and did not expressly recognize the right of redemption after sale. The declaration in the statute that foreclosures authorized by it shall only be made by petition to the county court, granting the letters of guardianship, was not intended to exclude — indeed, it could not have excluded — the jurisdiction, in such cases, of the Circuit Court of the United States, if that court would otherwise have jurisdiction. *Davis* v. *James*, 10 Bissell, 51. It had reference only to the courts of the State, and to the mode of foreclosing mortgages in the county court. Upon the other point, in respect to the right of redemption, it need only be said that it was not necessary to the validity of the mortgage that it should expressly reserve the right of redemption. That right is given by the statute, and is recognized by the Circuit

Court of the United States, sitting in Illinois, as a rule of property, and was so recognized in the final decree in this case. The decree expressly provides, in conformity with the law of Illinois and the rules adopted in the court below, that the purchaser shall receive a deed only after the expiration of fifteen months from the date of the sale. *Connecticut Mut. Life Ins. Co.* v. *Cushman,* 108 U. S. 51.

Again, it is insisted that, if the county court had power under the statute to authorize these mortgages, it could not authorize them without proof that such course was necessary for the preservation of the minor's estate, or, at the very least, that the estate would thereby be benefited. If such an objection as this can be urged in defence of a suit to foreclose the mortgages, or for the purpose of impeaching their validity, it is met by the fact that the record of this case fails to show that the county court made the orders authorizing the execution of the mortgages without full proof as to the necessity or propriety of making them. The statute does not require that the petition to the county court for leave to mortgage shall be supported by any particular amount of proof, nor prevent the court from acting upon its personal knowledge of the facts. The orders, showing the leave of the county court to make the mortgages in suit, are entirely consistent with a thorough investigation of the facts by that court, in some appropriate form, before the orders were made. Those orders recite that the court, upon examining the guardian's petition, was sufficiently advised in the premises. Even without such recital, and in the absence of anything to the contrary, it must be assumed that the court, if required by law to hear formal proof of the allegations in the verified petition of the guardian, discharged its whole duty.

At the argument it was contended by the appellant that the question of the validity of the mortgages in suit was concluded, in its favor, by *Kingsbury* v. *Powers,* 131 Illinois, 182, 192, where it was held that the guardian was entitled to credit for the amounts paid to the United States Mortgage Company for interest. One of the contentions there was that the county court had no power to authorize a guardian to borrow money

for the purpose of erecting new and costly buildings upon unimproved real estate, and that, therefore, the money so borrowed, upon which interest was paid, was borrowed without authority of law, and imposed no obligation whatever upon the estate of the ward. The court, referring to this contention, said : " That under certain circumstances the probate court [which had succeeded to the jurisdiction of the county court] exercising a chancery power, in that respect, (*Bond* v. *Lockwood*, 33 Illinois, 213,) is empowered to authorize a guardian to borrow money — under circumstances, as, for instance, for the prevention of irreparable injury to the estate, — is clear ; and our statute expressly authorizes that court to empower the guardian to mortgage the real estate. (See Rev. Stats. 1874, c. 64, §§ 24, 25, etc.) The several steps pointed out by those sections were pursued in this instance, in obtaining the decree. There was, therefore, authority in that tribunal to adjudicate, and, at most, its orders were erroneous only, and not void. Until reversed on appeal, or set aside by some appropriate proceeding, they were binding, and it was, therefore, incumbent on the guardian to pay the interest accumulating upon the indebtedness." There is certainly some ground for the appellant's contention that this decision, in effect, sustains the power of the guardian, with the leave of the county court, to borrow money to improve his ward's real property and secure its payment by mortgage ; for it would seem that the order of the county court would have been not simply erroneous, but void, if the statute did not, under any circumstances, authorize the borrowing of money to erect new buildings upon the unimproved real property of the ward, and to pay off existing mortgage encumbrances. It is, however, proper to say that *Kingsbury* v. *Powers*, as well as *Kingsbury* v. *Sperry*, 119 Illinois, 279, have been treated as not directly deciding the precise question before us, in respect to the validity of the mortgages in suit, and, in the absence of any direct determination by the Supreme Court of the State, we have given the statute that construction which, in our judgment, is required by its provisions. We hold, in accordance with the views of the Circuit Court, that the mortgages, and,

therefore, the bonds in suit, were not invalid for want of authority in law for their execution by the guardian, acting under the direction of the county court.

We pass to the examination of questions relating to interest, and to the mode of computing it.

2. The appellant is a corporation of New York, created by special act passed May 12, 1871. It is authorized by its charter (§ 2) " to lend money on bond and mortgage on real estate situated within the United States, or upon any hypothecation of such real estate, or upon hypothecation of bonds and mortgages on such real estate for any period of credit and repayable by annuity or otherwise." Its loans on mortgage or hypothecation (§ 16) "may be made to individuals, corporations, associations, states, cities, provinces and towns, or other municipal bodies authorized thereto." Its charter also provides (§ 21) that "no loan shall be made directly or indirectly to any director or officer of the company, nor shall any loan or advance of money be made at a rate of interest exceeding the legal rate." The highest rate of interest permitted by the general laws of New York to be contracted for, at the time the loans in question were made, was seven per cent. The same laws provided that no person or corporation should, directly or indirectly, take or receive interest at a greater rate. 2 Rev. Stats. N. Y. Part 2, Title 3, §§ 1, 2; vol. 2, 6th ed. p. 1164; vol. 4, 8th ed. p. 2512. By the statutes of Illinois, in force when the bonds and mortgages in suit were given, it was lawful for parties to stipulate for interest at the rate of ten per cent per annum, or any less rate. 1 Gross's Stats. Illinois, 371, § 10; 3 Ib. 244, § 4.

It is contended that the appellant, although having express authority by its charter to lend money on bond and mortgage of real estate, "situated within the United States," could not contract in Illinois for the highest rate of interest allowed by that State, but was limited to a rate of interest not exceeding that established by the State under whose laws it was created a corporation; and, therefore, it cannot, in the accounting, be allowed more than seven per cent interest upon the principal sum. We concur with the court below in holding this posi-

tion to be untenable. Reasonably construed, the appellant's charter authorized it to contract for such rate of interest as was lawful in the State where the contract of loan was made, and where the property mortgaged to secure the loan was situated. The general statute of New York had for its object to regulate the rate of interest upon loans there made, and not the rate upon loans made elsewhere. That State did not assume to fix the maximum of compensation to be paid to the lender for the use of money in other States. What compensation is fair or just for the use of money borrowed cannot well be determined upon principles applicable alike to all parts of the country. The risk is much greater for the lender, and the amount the borrower can reasonably pay is larger, in some localities than in others. Laws regulating the rate of interest necessarily depend upon the condition of the people in the particular States or communities enacting them. Such laws express the policy of the respective States upon that subject. When New York created the Mortgage Company, with power to loan money upon real estate anywhere within the United States, and prohibited it from lending money at a rate of interest " exceeding the legal rate," it did not intend to withhold from it the power to contract in other States, for interest upon moneys loaned, upon terms less favorable than those States permitted in respect to loans there made by other corporations, and by individuals. The legal rate referred to in the appellant's charter is the rate established by the law of the place where the contract of loan is made. This view is supported by those decisions in New York which hold, in respect to loans made in other States, that the rate of interest, allowed by the State where the contract of loan is made, will be respected by the courts of New York, although such rate is in excess of that fixed by its own laws, and although, in some of the cases, one of the parties to the contract, the lender, was a resident of that State. *Sheldon* v. *Haxtun,* 91 N. Y. 124 ; *Wayne County Savings Bank* v. *Low,* 81 N. Y. 566; *Pratt* v. *Adams,* 7 Paige, 615. See also *Tilden* v. *Blair,* 21 Wall. 241, and *Scudder* v. *Union Nat. Bank,* 91 U. S. 406, 412.

3. The next question to be considered is whether the over-

due coupons drew interest? The master allowed interest thereon, after maturity, at the statutory rate of six per cent per annum, but the Circuit Court held that interest upon interest was inadmissible.

By the statutes of Illinois in force when these loans were made — indeed, ever since 1845 — it was provided that " creditors shall be allowed to receive [interest] at the rate of six per cent per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing;" although under other statutory provisions parties might stipulate for, or agree upon, ten per cent or any less rate, " for money loaned or in. any manner due and owing from any person or corporation to any other person or corporation in that State." Rev. Stats. Ill. 1845, 294; 1 Gross's Stats. Ill. 370, c. 54; 3 Gross's Stats. Ill. 243; 1 Starr & Curtis, 1356; Rev. Stats. 1874, p. 614.

The bond, given by the guardian on the first loan, dated July 10, 1872, provided for the payment of " the principal sum of $175,000, in gold coin of the United States, on the 1st. day of May, 1882, with interest for the same, to be computed from the day of the date hereof, at the rate of nine per centum per annum, in like gold coin, which said interest shall be paid half-yearly, to wit, on the first day of each of the months of November and May from and after the date hereof, which will be in each and every year until the said principal sum shall be fully paid, which said interest payments, until the said principal sum shall become due, are specified in and further secured by twenty coupons given herewith. . . . But this bond is not intended to bind said Anson Sperry personally or his personal estate, but to bind him as such guardian and the estate of the said minor, Henry W. Kingsbury, [of] which he is guardian as aforesaid." These provisions were also contained in the mortgage given to secure the payment of the bond. The coupons of this bond were also signed by the guardian, and were in the following form : " Due the United States Mortgage Company, $—, on the first day of ——, 18—, in gold coin of the United States, payable, at such place at the city of Chicago, in the State of Illinois, as the United States Mortgage Com-

pany, their successors, legal representatives or assigns, shall in writing from time to time appoint, and in default of such appointment, then at the agency of said company in the said city of Chicago, being for the payment of an instalment of interest due on that day on my bond to the said United States Mortgage Company of this date, conditioned for the payment in gold coin of the United States of $—, with semi-annual interest at nine per cent per annum on the whole sum from time to time remaining unpaid, in gold coin of the United States, said bond being made to secure a loan made to me in like gold coin." The bonds, mortgages and coupons executed for the other two loans contained similar provisions.

Each contract of loan was made and was to be performed in Illinois; and each bond provides that it is to be construed by the laws of Illinois. Interest upon interest, as represented by the coupons, must therefore be allowed or disallowed as may be required by the law of that State. In Illinois, the whole subject is regulated by statute, and interest cannot be recovered unless the statute authorizes it. *Sammis* v. *Clark*, 13 Illinois, 544, 546; *Phinney* v. *Baldwin*, 16 Illinois, 108; *Aldrich* v. *Dunham*, 16 Illinois, 403; *Pekin* v. *Reynolds*, 31 Illinois, 529, 532; *Illinois Central Railroad* v. *Cobb*, 72 Illinois, 148, 152; *Chicago* v. *Allcock*, 86 Illinois, 384; *Ohio* v. *Frank*, 103 U. S. 697.

The precise question before us is, whether the interest provided for in the bonds and mortgages in suit, and further evidenced by coupons, drew interest after maturity, in virtue of the above statute allowing interest at the rate of six per cent per annum "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." The scope and effect of this statute have been considered by the Supreme Court of Illinois in numerous cases, which have been the subject of extended discussion by counsel.

*Walker* v. *Hadduck*, 14 Illinois, 399; *Heiman* v. *Schroeder*, 74 Illinois, 158; and *Knickerbocker Ins. Co.* v. *Gould*, 80 Illinois, 388, referred to by appellant, and the recent case of *Heissler* v. *Stose*, 131 Illinois, 393, 397, hold, respectively, that instalments of rent due on a written lease, instalments due on

a written contract for building, and the amount due on a policy of insurance are moneys due on instruments of writing, and, therefore, by the statute, draw interest after maturity. These cases do not bear directly upon the question of interest upon interest; for the moneys due in them were principal sums. Interest upon such sums is in no sense interest upon interest. In *McFadden* v. *Fortier*, 20 Illinois, 509, 516, a proceeding by *scire facias* to foreclose a mortgage given to secure promissory notes, each for a definite principal sum to be paid at a named date, "with six per cent interest," the court said that the rule for casting interest on notes, bonds, etc., upon which partial payments have been made, was to apply such payments to keep down the interest, "but the interest is never allowed to form a part of the principal so as to carry interest."

*Leonard* v. *Villars*, 23 Illinois, 377, much relied on by the appellee, was a suit to foreclose a mortgage given to secure four promissory notes, which, upon their face, were made payable, respectively, in one, two, three and four years from date, with interest at the rate of ten per cent per annum, "the interest to be paid annually in advance." Only the first year's interest was paid in advance. In relation to the computation of interest, the court said: "To compute interest upon interest after its maturity, has, by all courts, whether exercising equity or common law jurisdiction, been held to be compound interest, and in violation of law. This question is one that has been frequently presented, and it is believed, as uniformly held to be unauthorized. We are not aware of any well-considered case, which has held that there is an implied legal or moral obligation to pay interest upon interest after its maturity. The court below erred in computing interest after it fell due." p. 380. This case was referred to in *Barker* v. *International Bank*, 80 Illinois, 96, which was a suit to foreclose a deed of trust given to secure the payment of a promissory note on a named day, "with interest at the rate of six per cent." The court said: "No payments having been made upon the note, the interest should have been computed from the date of the note until the rendition of the decree, and added to the principal, and a decree rendered for that

amount. It was expressly decided by this court, in *Leonard* v. *Villars*, 23 Illinois, 377, that it was error to compute interest upon interest. The rule there announced must control here." p. 101.

In *Dulaney* v. *Payne*, 101 Illinois, 325, 331, which was an action of assumpsit for the principal amount due on a promissory note payable at a named date, "with ten per cent interest from date, interest payable semi-annually," a previous judgment obtained in a separate action for an instalment of interest was pleaded in bar, but the court held the plea to be bad, upon the ground that the note contained two distinct contracts — one to pay the principal, and the other the interest — and that a separate action could be maintained after the maturity of interest to recover such interest only. The same principle had been announced in *Walker* v. *Kimball*, 22 Illinois, 537, and was repeated in *Wehrly* v. *Morfoot*, 103 Illinois, 183, 186, and in *McDole* v. *McDole*, 106 Illinois, 452, 459. *Thayer* v. *Star Mining Company*, 105 Illinois, 541, was a suit for the specific performance of a contract for the sale of real estate, in which there was a question as to the computation of interest on the amount of promissory notes maturing at named dates, each "with interest payable annually." The court said: "It is true that compound interest will not be allowed in the absence of an agreement to pay it; but after interest has accrued due, it may by agreement between the parties be turned into principal, and made to bear interest for delay of payment." See also *Haworth* v. *Huling*, 87 Illinois, 23; *McGovern* v. *Union Mut. Life Ins. Co.*, 109 Illinois, 151, 156, and *Gilmore* v. *Bissell*, 124 Illinois, 488.

In none of these cases were there separate coupons or warrants representing the stipulated interest. But *Harper* v. *Ely*, 70 Illinois, 581, 586, (*Harper* v. *Ely*, 56 Illinois, 179,) and *Humphreys* v. *Morton*, 100 Illinois, 592, were of that class. *Harper* v. *Ely* involved a question as to interest evidenced by coupons of a bond secured by a trust deed. The court said: "The coupons provide for the payment of a definite sum of money at a specified time. They are in writing, and in effect are promissory notes, and we are aware of no reason why in-

terest should not be computed upon them after they became due. *Gelpcke* v. *Dubuque*, 1 Wall. 175, 206; *Hollingsworth* v. *Detroit*, 3 McLean, 472; *Dunlap* v. *Wiseman*, 2 Disney (Ohio) 398." *Humphreys* v. *Morton* was a suit to foreclose mortgages given by a railroad company to secure bonds, with interest warrants attached, which it had issued. The warrants were in the following form: "$35. Peoria, Pekin and Jacksonville Railroad Company. Interest warrant for thirty-five dollars, payable at the Importers' and Traders' Bank of the city of New York, on the first day of —, 18—, for 6 months' interest on bond No. —. L. Chapman, Jr., Secretary." The court said: "That interest was properly allowed and computed on this instrument, is settled by *Harper* v. *Ely*, 70 Illinois, 581, and the cases there referred to; and reference may, also, be made to *Clark* v. *Iowa City*, 20 Wall. 583; *Genoa* v. *Woodruff*, 92 U. S. 502; and *Amy* v. *Dubuque*, 98 U. S. 470, 473, holding the same doctrine." So, in the late case of *Benneson* v. *Savage*, 130 Illinois, 352, 367, it was said that "the executing of a coupon is the executing of an instrument, which, *ex vi termini*, bears interest after maturity — if no rate is expressed, six per cent; and, at the date of executing these coupons, any rate not exceeding ten per cent might be fixed by agreement of the parties;" citing *Harper* v. *Ely* and *Humphreys* v. *Morton*.

The case of *Leonard* v. *Villars*, referred to with approval in *Barker* v. *International Bank*, undoubtedly proceeds upon the broad ground, that the statute does not allow interest upon interest, even where the instrument given for the payment of the principal sum at a named date is a promissory note, and provides on its face, but not also in separate coupons, for the payment of interest at stated periods intermediate the date of the note and the maturity of the principal sum. The question was much discussed at the bar as to whether the doctrine of that case was modified by later cases.

It is argued that, as a note or other written instrument providing on its face for the payment of the principal debt, with interest at named dates in advance of the maturity of the principal sum, contains two distinct contracts, one to pay the

principal and the other to pay the interest, (*Dulaney* v. *Payne*, *Walker* v. *Kimball*, and *Wehrly* v. *Morfoot*, above cited,) such interest is as much money due on an instrument of writing as if it were evidenced by separate coupons. But that interpretation of the statute is scarcely consistent with *Leonard* v. *Villars*, and we cannot assume that the Supreme Court of Illinois has intended by its later decisions to overrule the doctrine of that case. *Harper* v. *Ely*, *Humphreys* v. *Morton*, and *Benneson* v. *Savage* decide nothing more than that separate coupons, when they are, in effect, negotiable promissory notes, and, therefore, instruments upon which the obligor may be held personally liable: for the amount named in them, draw interest after maturity by virtue of the statute, and are exceptions from the general rule announced in *Leonard* v. *Villars*. That such is the state of the local law is manifest from the case of *Drury* v. *Wolfe*, 25 N. E. Rep. 626, decided since this cause was submitted. It was there said by Mr. Justice Scholfield, speaking for the court : " The general rule recognized by this court, is, that parties cannot be bound by any contract made before interest is due for the payment of compound interest [citing, among other cases, *Leonard* v. *Villars*] ; . . . but, after interest is due, it may, by agreement then made, be added to the principal, and made to thereafter bear interest. . . . There is, perhaps, an exception to the rule, as first above stated, in the case of interest coupons annexed to commercial paper. Such coupons bear interest. *Benneson* v. *Savage*, 130 Illinois, 352, and cases there cited. But in such case interest is not compounded indefinitely. Interest is simply payable upon the amount of the face of the coupon ; and that the coupon bears interest is solely because of the character given it by commercial usage. *Aurora* v. *West*, 7 Wall. 82, 105 ; *Mercer Co.* v. *Hacket*, 1 Wall. 83 ; *Meyer* v. *Muscatine*, 1 Wall. 384. There is, therefore, no authority in this for holding that interest may be compounded indefinitely, or at all, in cases where the payment of interest is not secured by some negotiable instrument, independent of the instrument whereby the original indebtedness is presumed to be paid."

The present case is controlled by the general rule that

interest upon interest will not be allowed, and is not within the exception established by the recent cases in the Supreme Court of Illinois. The coupons signed by the guardian, although additional evidence of the interest agreed to be paid, are not independent obligations, nor strictly commercial securities, upon which he can be held liable; for, by the express contract between the parties, recited in the bonds and mortgages, he and his estate are exempt from all liability for the moneys borrowed. And as the ward was not personally liable for these moneys (Story on Bills, §§ 74, 75; *Forster* v. *Fuller,* 6 Mass. 58; 1 Daniel on Nego. Instr. § 271; 1 Parsons on Notes and Bills, 89, 90,) the bonds as well as the coupons were, in effect, payable out of particular funds, and not absolutely and at all events as in the case of commercial paper.

It results that the Circuit Court properly disallowed interest upon interest.

4. It is said that the company agreed, during the progress of the cause below, that interest be computed at nine per cent until the date of the appointment of LeMoyne as guardian of Kingsbury, and at only six and one-half per cent after that date; and that as the sum adjudged to the company was the precise sum due, at the date of the decree, upon the above basis, the decree was for the right amount, and ought not to be reversed, even if the court below erred in holding that coupons do not draw interest after maturity, and that the third mortgage embraced items that ought not to have been included in it.

The facts out of which this contention arises are as follows:

On the 20th of September, 1877, John V. LeMoyne became Kingsbury's guardian in place of Powers, resigned, and, by an order entered May 15, 1878, was directed to pay into court, for investment in United States bonds, all sums secured by him as rents subsequently to November 26, 1877, and thereafter pay into court, on the first day of each month, all sums received by him, less such sums as might be paid, under the order of the court, for the support of the ward and to meet other expenses. LeMoyne, December 2, 1878, filed an

answer impeaching the validity of the mortgages and denying the right of the Mortgage Company to do business in Illinois. On the 18th of January, 1882, there was filed in court a written stipulation, signed by the appellant's attorneys, which recited that a large net income was being collected annually from the ward's estate which could be applied to the reduction of whatever claim the Mortgage Company may have, and that it had agreed to a reduction of the rate of interest on the indebtedness claimed, under the arrangement and on the terms and conditions in that stipulation set forth. Those terms and conditions were as follows: "1. That if an order is made in said cause that the amount now deposited in this court to the credit of said estate shall be forthwith paid to said United States Mortgage Company, and that hereafter the income from said estate, after deducting all necessary expenses of said property, shall be paid monthly to said Mortgage Company, the said payments to be credited by said Mortgage Company on any amount which may be ultimately found due to said company from said estate, then the said United States Mortgage Company agrees that from the date of the appointment of said John V. LeMoyne as guardian of said minor the rate of interest on the indebtedness claimed by said company shall be reduced from nine per cent per annum to six and one-half per cent; said reduction being made, however, upon the express condition that the payments above provided for shall be made, and that the said minor shall, within six months after his majority, pay to said Mortgage Company the principal sums included in said mortgages, with interest thereon to be computed (to the date of said LeMoyne's appointment as guardian) at the rate and according to the terms of said mortgages, and thereafter at said reduced rate; and upon the further express condition that if said payments are not made as aforesaid, then said company shall have the same right to proceed with the foreclosure of said mortgages, and to demand and collect the full amount secured by said mortgages, according to their terms, and without deduction from the rate of interest provided for in said mortgages, and shall have the same rights in all respects under said mortgages as if this

stipulation had not been made. 2. An order shall be entered in said cause directing the payments to be made to said Mortgage Company according to the terms of this stipulation, and this stipulation shall take effect from the date of the entry of said order."

On the same day the court made an order, which, after reciting the pending motion of the complainant that the money deposited in court by LeMoyne, pursuant to the order of May 15, 1878, be paid to it, and also the terms of the above stipulation, directed "that all the money now in court in this cause, including proceeds of bonds to be converted by the clerk, amounting to a total sum of sixty-one thousand nine hundred and sixty-nine dollars and twenty cents, be paid to said complainant, less the clerk's commissions of one per cent, said clerk taking its receipt therefor, and that hereafter said defendant LeMoyne pay to the said complainant monthly the money required by said order of May 15, 1878, to be paid into court, and that he take the receipt of the said complainant and file the same in lieu of the money with his monthly report herein, and that all such sums of money so to be paid to said complainant shall be paid on account of any indebtedness which may ultimately be found by this court to be due to said complainant in this suit, without determining any of the questions involved herein." The monthly payments provided for in the stipulation were made to the appellants up to September, 1884. On the 15th of October, 1884 — Kingsbury having become of full age in December, 1883 — there was paid to the company, out of the proceeds of a certain portion of the mortgaged property, released by it from the mortgages in suit, the sum of $180,000. As evidence of that payment, a writing was filed in court, signed by Kingsbury, by LeMoyne, his attorney in fact, and by the Mortgage Company, which stated: "The United States Mortgage Company has received from Henry W. Kingsbury, by John V. LeMoyne, one hundred and eighty thousand dollars, to be applied on any indebtedness or claim which may be found due it from said Kingsbury in the above suit, and said payment is made by said Kingsbury and received by said Mortgage Company upon

the agreement that it shall not in any way operate or be considered a waiver of any claim that either of said parties have made or claimed or may have or claim in said suit or in regard to the subject matter thereof, it being expressly understood that neither this nor any other payment received by said Mortgage Company from said Henry W. Kingsbury shall be construed in any way to be a waiver of the claim now made by said Mortgage Company, that it is entitled to demand the full amount of the principal and semi-annual interest thereon at nine per cent per annum, specified to be paid by the terms of the original bonds and mortgages, held by the said Mortgage Company."

On the 2d day of June, 1885, Kingsbury filed his separate answer, in which, among other things, he denied that the county court had ever authorized, or could legally authorize, the creation of the loans, or the giving of the mortgages, here in suit. Subsequently, June 13, 1885, he filed a petition in the cause, referring to the stipulation and order of January 18, 1882, the payment to the appellant, under that order, of $65,730.40, and the payment of the further sum of $60,598.97 up to September, 1884, and stating that the Mortgage Company had refused to come to any settlement with him unless he recognized the validity of the mortgages, and allowed interest on the principal debts at nine per cent, although he was willing, while denying the validity of the mortgages, that a decree be entered binding his property for the actual cash received by his guardians, subject to all payments made, with six per cent interest; that the net income of the estate was about $40,000, having nearly doubled since this action was brought; that the then fair appraised value of the mortgaged property was fully $800,000; and that LeMoyne had collected and had in his hands $17,000 of income from the petitioner's property. The prayer of his petition was that an order be entered directing LeMoyne to pay over such moneys to him, "and that the orders of May 15, 1878, and January 18, 1882, may be discharged and declared to be of no effect as to the future income of said property, and all other relief." On the 28th of November, 1885, this application was heard,

and an order entered granting the prayer of the petition, discharging the receiver, and directing him to forthwith deliver to Kingsbury the possession and control of all the real estate, buildings, personal property and choses in action, money, books and papers in his hands or under his control. The order was made upon certain conditions that do not affect the question now being considered.

The contention of the appellee Kingsbury is, that under this state of facts the Mortgage Company cannot claim interest at a greater rate than six per cent after the date of the appointment of LeMoyne as guardian. It is argued that the court, by its order of January 18, 1882, accepted, for the benefit of the ward, the company's offer to reduce the rate of interest, without assenting to the express conditions imposed by the stipulation; that if the company did not approve the order, in the form in which it was entered, it should have declined to receive the moneys then in the registry of the court, which were directed to be paid to it; and that the receiving those moneys, as well as the monthly rents subsequently accruing, was a waiver of the express conditions set forth in the stipulation, and equivalent to an unconditional agreement by the company to reduce the interest. We cannot assent to this view. The court below certainly did not intend, by the order of January 18, 1882, to ignore the conditions upon which the company's offer to reduce the rate of interest was based. It intended, so far as it had the power, to put the ward in a position in which he could, upon arriving at age, avail himself of the proposed reduction of interest. And if Kingsbury had, within the time specified in both the stipulation and the order, paid into court the full amount of any balance due, allowing only six and a half per centum interest after the date of LeMoyne's appointment as guardian, the company's stipulation to reduce the interest could, perhaps, have been enforced. But he chose not to perform the required condition, but to take his chances of a favorable decision of the cause upon the issues made by the pleadings. To that end he obtained the order setting aside that of January 18, 1882, as of no effect. So that, before the final decree was made, the plan of settle-

ment, indicated in the order of 1882, was repudiated by both parties, and by the court itself. The effect of the order of November 28, 1885, setting aside that of January 18, 1882, and giving Kingsbury full control of the mortgaged property, of the moneys then in court or thereafter to come from rents — even if that effect had not been produced by the failure of Kingsbury to meet the condition to be performed by him within six months after reaching his majority — was to remit him and the company to whatever rights either had under the original contracts of loan prior to the stipulation and order of January 18, 1882. The construction placed upon the stipulation and order of January 18, 1882, is in harmony with the rule, supported by authority, that "where a certain sum of money is due, and the creditor enters into arrangements with his debtor to take a lesser sum, provided that sum is secured in a certain way and paid at a certain day, but if any of the stipulations of the arrangement are not performed as agreed upon, the creditor is to be entitled to recover the whole of the original debt, such remitter to his original rights does not constitute a penalty, and equity will not interfere to prevent its observance." White & Tudor's Leading Cases Eq. vol. 2, p. 2025; Pomeroy's Eq. § 438; *Thompson* v. *Hudson*, L. R. 4 H. L. 1; Coote on Mortgages, 4th ed. 883; Powell on Mortgages, 6th ed. 900; Adams on Equity, 7th ed. 109; *Reeves* v. *Stipp*, 91 Illinois, 609.

5. We come to consider the transaction of the third mortgage, the one for $95,000 in gold. In the settlement of that loan, which occurred December 19, 1876, the guardian received in money only $41,805.73. The balance of $53,194.27 was paid (1) in over-due coupons of the first and second loans, which were cancelled and surrendered to the guardian; and (2) in the company's claim of interest upon such over-due coupons, at the rate of nine per cent, after their maturity. The amount of this interest upon over-due coupons was $7219.27, which was disallowed, and the loan treated as one in fact of $87,780.73 only. According to the views already expressed, the company was not entitled, in the final computation, to interest upon over-due coupons, after their maturity, even at the

statutory rate of six per cent per annum. The application to the county court for leave to make the loan for $95,000 did not indicate the purpose of the guardian, in the settlement of that loan, to allow interest upon over-due coupons to be taken up by him. No such question was passed upon by that court, and if its assent would have authorized the guardian to pay such interest, no such assent was given. Certainly, the guardian could not, without leave of the court, make an allowance of interest upon past-due coupons that were not negotiable securities. The court below was, therefore, right in treating the loan as one only of $87,780.73.

It is contended that this loan was usurious, (*Peddicord* v. *Connard*, 85 Illinois, 102; *Leonard* v. *Patton*, 106 Illinois, 99; *Amundson* v. *Ryan*, 111 Illinois, 506,) and that the whole interest on it was, for that reason, forfeited under the statute of Illinois, which allows parties to stipulate for any rate of interest for money loaned, not exceeding ten per cent per annum, but which, also, provides: " 5. No person or corporation shall, directly or indirectly, accept or receive, in money, goods, discounts or thing in action or in any other way, any greater sum or greater value, for the loan, forbearance or discount of any money, goods or thing in action, than as above prescribed. 6. If any person or corporation in this State shall contract to receive a greater rate of interest or discount than 10 per cent upon any contract, verbal or written, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to recover the principal sum due to such person or corporation." The ground of this contention is, that nine per cent on $95,000 for the full term of the loan, seven years, $59,850, increased by the $7219.27 included in the principal sum, in all, $67,069.27, would be in excess of ten per cent interest, for that term, on the amount really loaned by the company. We do not concur in the view taken by the appellee. If the county court had authorized the guardian, in the settlement of the $95,000 loan, to allow interest upon interest, and make the interest, thus increased, a principal sum to draw interest, a different question would have been presented; for it is the settled doc-

trine of the Supreme Court of Illinois that an agreement made after interest is due to make it a principal sum does not render the transaction usurious. *Haworth* v. *Huling*, 87 Illinois, 23 ; *Thayer* v. *Star Mining Co.*, 105 Illinois, 540, 553 ; *McGovern* v. *Union Mut. Life Ins. Co.*, 109 Illinois, 151 ; *Gilmore* v. *Bissell*, 124 Illinois, 488 ; *Drury* v. *Wolfe*, 25 N. E. Rep. 626. In the case of *Gilmore* v. *Bissell*, above cited, the court said: " This was a bill to foreclose a mortgage. The only defence relied upon was usury. . . . This note was secured by mortgage on the premises in controversy. On the 28th day of August, 1878, no interest having been paid on the note, Finley required the parties to pay the debt or renew the note. They concluded to renew. In computing the amount due, the agent of Finley charged on the interest due, from the time it became due to the date of renewal, interest at six per cent per annum. This was added to the interest due and the principal, which all amounted to the sum of $1350, for which a new note and mortgage were given. The interest on the interest included in the mortgage amounted to $12.50, as is claimed by the defendants. The addition of this amount to the debt and the agreement to pay it, it is insisted, rendered the transaction usurious. We do not concur in this view. The mortgagors had agreed to pay the interest on the mortgage debt annually, and it was their duty to observe that agreement; but they had failed to pay, as the interest each year became due. When the time, however, came to renew the debt, the mortgagors had the right, if they saw proper, to redeem their agreement and pay interest on the interest ; and their agreement to pay that interest was not illegal nor did it render the transaction usurious. What was done was but the performance of a contract made by the parties, which they had the right to do. If authority was needed to sustain the view of the circuit and appellate courts, *Haworth* v. *Huling*, 87 Illinois, 23, is conclusive of the question made." But the county court did not authorize the guardian of Kingsbury to allow interest upon interest when making the settlement in respect to the third loan. It only authorized him to borrow $95,000 in gold, or its equivalent in currency. But, on the

settlement of the loan, he received only $87,780.73, and wrongfully permitted the company to retain the $7219.27 in payment of interest upon interest, because he, in good faith, believed that it was entitled to such interest.   There was no contract, within the meaning of the statute, that the company should receive usurious interest, for no such contract was attempted to be authorized by the county court.   In fact, the allowance by the guardian of interest upon interest was under a mistaken view of the obligation of the coupons in that regard.   The remedy for the wrongful retention of the $7219.27 out of the amount the Mortgage Company agreed to lend is to treat the loan as one for only $87,780.73, making the calculation of interest on the principal sum on that basis, and not to forfeit the interest on the sum actually received by the guardian from the company.

6. It is contended that the Mortgage Company could not demand interest, after Kingsbury reached his majority, at a rate in excess of six per cent.   The argument made in support of this proposition is that, as the guardian could not, under the statute, have created a debt, secured by mortgage, that did not mature at or before the ward's majority, he had no authority to contract for the payment of interest after the ward reached full age, and that the rate, after his majority, must be controlled by the statute, and not by express contract. We do not concur in this interpretation of the statute.   The guardian had authority, with leave of the court, to make these loans, and to stipulate for any rate of interest not exceeding ten per cent.   He stipulated for interest at nine per cent, payable half-yearly in each year until the principal sum "shall be fully paid."   Such a contract, in case of individuals, capable of acting for themselves, would bind the obligor to pay interest on the principal sum at that rate after its maturity. *Phinney* v. *Baldwin*, 16 Illinois, 108; *Etnyre* v. *McDaniel*, 28 Illinois, 201.   We perceive no reason why the guardian may not, under the statute, make such a contract, subject, of course, to the condition that the maturity of the debt, created by him, on behalf of the estate, shall not extend beyond the ward's minority, and subject, therefore, to the right of the

ward, immediately upon attaining full age, to pay off the debt, or, by agreement with the lender, obtain an extension of the time of maturity, and a less rate of interest. The statute does not mean that the ward may retain the benefit of the contract after he attains full age, and repudiate its provisions. Of course what is here said must be taken in connection with the statute of Illinois providing that "judgment recovered before any court or magistrate shall draw interest at the rate of six per centum per annum from the date of the same until satisfied." Rev. Stats. Illinois, 1874, c. 74, § 3. Where the debt is merged in a judgment or decree, the contract ceases to exist, and the rate of interest is thereafter controlled by the statute. *Mason* v. *Eakle,* Breese, 52; *Tindall* v. *Meeker,* 1 Scammon, 137; *White* v. *Haffaker,* 27 Illinois, 349; *Wayman* v. *Cochrane,* 35 Illinois, 152; *Palmer* v. *Harris,* 100 Illinois, 276, 280; *Phinney* v. *Baldwin and Etnyre* v. *McDaniel,* above cited; *Conn. Mut. Life Ins. Co.* v. *Cushman,* 108 U. S. 51, 54.

It results that the decree below must be reversed as to that part which allowed only $6963.07 as interest to December 15, 1885, on the third loan. It should have allowed interest on $87,780.73, the real amount of that loan, at the rate of nine per cent per annum to the date to which, as above, the calculation was made, and interest after that date at the statutory rate of six per cent. In that respect, and to that extent only, the decree must be modified.

*The decree is reversed, and the cause remanded for further proceedings consistent with this opinion.*