The judgments of the United States Customs Court are *affirmed.*

UNITED STATES *v.* QUALITY MARBLE & GRANITE CO., ARTHUR J. FRITZ & CO., ET AL. (No. 5026) [1]

United States Court of Customs and Patent Appeals, Dec. 22, 1960

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Murray Sklaroff,* trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn,* (*Edward N. Glad* and *Joseph Schwartz,* of counsel) for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C.D. 2127, sustaining the importers' protests and holding certain merchandise properly classifiable as marble slabs under paragraph 232(b) of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52476. The merchandise was classified by the Collector of Customs as marble wholly or partly manufactured into articles under parapgraph 232(d) of the Tariff Act of 1930, as modified by T.D. 54108.

---
[1] C.A.D. 763.
[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d) Title 28, United States Code.

The pertinent portions of the Tariff Act of 1930, as modified, read:
Paragraph 232(b).

> Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> If polished in whole or in part (whether or not rubbed):
> > If not more than one inch in thickness_____ 7¢ per superficial ft.

Paragraph 232(d).

> Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for.

As noted, the Customs Court held the merchandise to be marble slabs, but the Government argues it should be classified as marble, wholly or partly manufactured into articles under paragraph 232(d), relying on *Atlas Export Co., F. L. Kraemer & Co.* v. *United States*, 43 CCPA 122, C.A.D. 618.

The importation consists of square, rectangular, and round pieces of marble of three-quarters and five-eighths of an inch thickness. The pieces vary in size, the larger being 60 by 20-inch rectangles, 42-inch rounds, and 30 by 30-inch squares, while smaller sizes are 24 by 30-inch rectangles, and 18-inch rounds. All pieces are polished on the edges and one face, the other being unpolished. The exhibit representing the edges of all pieces shows that they are not sharp at the corners where the top surface meets the edge, but are slightly rounded or blunted, thereby forming an arris.[3]

The vice-president of appellee testified that the rectangular pieces are used in the furniture and building trades for making pullman tops, fireplace hearths, bench tops, table tops, shelves, desk tops, console tops, cabinet tops, and crypt fronts, that ninety percent of all the round pieces are sold to furniture manufacturers for use as table tops, and that generally all of the pieces are used in their imported condition.

A witness for the Government who qualified as an expert marble mason with 35 years experience testified he had purchased the 36-inch rounds, 42-inch rounds, and 60 x 20 rectangular pieces of marble from appellee and sold all of them for table tops, all being used for that purpose in their imported condition. He further testified that an arris limits the use of the piece of marble and that if it was to be used for paneling or for a butt edge, the arris would have to be eliminated.

---

[3] For the purpose of this case, we consider the term "arris" to be defined by the following testimony of a witness for the Government, regardless of possibly inconsistent dictionary definitions:

Q. \* \* \* We have heard the term "arris" here before. Did you hear that term?
A. That's a common term in the marble business which means just a round. You can have anything from a sixteenth arris to a half-inch arris on the stone, and it just denotes the roundness of the marble where two pieces, horizontal and vertical piece meets. This is an arris.

He also testified that the importations could only be used in the condition in which they were imported if they are to retain the finished effect intended by the workmanship abroad.

In holding the merchandise to be slabs rather than marble wholly or partly manufactured into articles, the Customs Court relied, *inter alia*, on *Mutual Lamp Mfg. Co.* v. *United States*, 21 CCPA 231, T.D. 46762, in which flat pieces of onyx in the form of 8 by 9-inch rectangles, or disks 6 inches in diameter, were held to be classifiable as slabs under paragraph 232(b).

As noted, the Government relies here primarily on *Atlas Export Co.*, supra. The merchandise there consisted of pieces of onyx seven-eighths of an inch thick and either in the form of 3½-, 6-, or 8-inch squares, or of disks, 5, 6, or 8 inches in diameter. Each piece had a hole drilled in the center. They could be used for various purposes such as lamp bases, clock cases, smoking stands, wall tiles, and book ends, and the evidence showed that the holes not only advanced them toward an ultimate use, but were essential for the actual use of the pieces in any finished product in which they might be employed. That merchandise was held to be classifiable as onyx wholly or partly manufactured into articles under paragraph 232(d).

It is urged by the Government that the conclusion reached in *Atlas* was not dependent on the presence of the holes in the pieces and that "Furthermore, it is apparent that the *Atlas* case nullifies the holding in the *Mutual Lamp* case, even though it contains no specific language to that effect."

Before the ultimate issue is resolved, it would be well to make one observation. If table tops or other things for which the merchandise was to be used are articles per se, then the importations could be considered *wholly* manufactured into articles. However, if the tables or the desks, etc., are *the articles*, then the imported marble could be considered partly manufactured into these articles. This court in considering these same paragraphs in the *Atlas* case which involved onyx lamp *bases* seemed to indicate that the importations themselves constituted the articles even though the bases were to be attached to lamps after importation. In either event, the merchandise at bar would come within the purview of paragraph 232(d) unless it is more appropriately classified under 232(b). This brings us to the primary issue, i.e. whether the imported marble pieces are to be considered slabs for tariff purposes or are to be considered pieces of marble which have been "wholly or partly manufactured into * * * articles."

It has been established that ninety percent of the round importations have been manufactured for use as table tops and sold to furniture manufacturers in this country, that generally all of the importations are used in the condition in which they are imported, and that to use

them otherwise would nullify part of the work which had already been done on them. We therefore are of the opinion that the merchandise is properly classifiable under paragraph 232(d).

This court in the *Atlas* case has answered all of the arguments presented by appellee in holding that onyx lamp bases are classifiable under paragraph 232(d) rather than under paragraph 232(b) and we see no significant differences between the merchandise at bar and that involved in the *Atlas* case insofar as the basic issues are concerned.

This court in that case stated:

Assuming, without deciding, therefore, that the imported merchandise might in some respects be termed "slabs," we turn to a consideration of the applicability of paragraph 232(d). Is the imported merchandise "wholly or partly manufactured into * * * articles"? We are in agreement with the majority of the court below in its holding that it is not necessary for merchandise to be dedicated to the manufacture of one specific article or class of articles to fall under paragraph 232(d). A significant fact to be noted is that the drilling of the hole in these articles is apparently the last manufacturing step that is performed on them. In most of the uses described by the witnesses, the only thing that remains to be done to the articles is an assembling step. The fallacy of appellants' argument can readily be appreciated when it is realized that under their theory a completely manufactured article could be taken out of paragraph 232(d) by the mere fact that it also could be processed further into different articles.

That it was not the intention of Congress to require any greater degree of "dedication" than is present here is shown by the *Summary of Tariff Information*, 1929. In discussing paragraph 233 of the Tariff Act of 1922 (the predecessor of paragraph 232(d) of the Act of 1930), it is stated:

Manufactures of marble, breccia, and onyx, n.s.p.f., cover all manufactures of marble not provided for in paragraph 232; * * *. The remaining manufactures include, among other things, monuments, tombstones, table tops, drain boards, benches, urns, illuminating units for artificial lighting, *lamp bases*, ink wells, and many art and novelty pieces. [Emphasis added.]

It is clear that Congress intended to include under paragraph 232(d) articles of the type imported here. If these articles are not lamp bases, they can certainly be said to be partly manufactured lamp bases, even though they may be usable for other purposes. As a matter of common sense, an article which is suitable for use as a lamp base will in the great majority of cases be suitable as a base for a variety of objects, including, as was testified in this case, smoking stands and trophies. It is also conceivable that an article in the appropriate size and shape and condition for use as a lamp base might also be adaptable for a different unrelated use. Many of the other items in the list quoted above would clearly also be adaptable to other uses. For example, a table top might be used as a "panel" or a shelf (see *Richard Shipping Corporation* v. *United States*, 17 C.C.P.A. (Customs) 417, 418, T.D. 43865), or a tombstone (if unengraved) might be made into a table top, or a drain board, or a bench. It is abundantly evident that "dedication" to a specific use is not essential to classification under paragraph 232(d).

Although in another part of the *Atlas* opinion, a distinction was drawn between lamp bases without a hole as were involved in the *Mutual Lamp* case and those with a hole, we do not believe that this

factor is controlling. Certainly the above quoted portion of the *Atlas* opinion with which we agree is consistent with this position.

For the foregoing reasons, we *reverse* the decision of the Customs Court.

———

WORLEY, C. J., with whom KIRKPATRICK, J. joins dissenting.

I am unable to see any material difference, so far as classification is concerned, between the instant merchandise and that involved in *Mutual Lamp Mfg. Co.* v. *United States*, 21 CCPA 231, T.D. 46762. There, as here, the merchandise comprised round and rectangular pieces polished on one face, and in each case the pieces were ordered in specific sizes with particular purposes in view. The fact that the corners are rounded in the instant merchandise is not material since the testimony indicates that such rounding is necessary in pieces of the size here involved in order to prevent chipping.

The Customs Court held *Mutual* to be in point here, the importer concurs in that conclusion, and the Government's brief states that the issue in that case "was the same as that involved in the instant protest."

While the Government contends *Mutual* was overruled by *Atlas Export Co. et al.* v. *United States*, 43 CCPA 122, C.A.D. 618, I do not find that to be the case. The marble pieces in *Atlas* had holes drilled through them, while no such holes are in the instant merchandise or that in *Mutual*. While the *Atlas* opinion contains language which, read out of context, might suggest that the presence of the hole was not controlling as to classification, the opinion actually contains the following categorical statement with respect to the *Mutual* case:

> It has been conceded by the parties hereto that except for the hole drilled in the center of each piece, the merchandise in this case is substantially similar to that before this court in *Mutual Lamp Mfg. Co.* v. *United States*, 21 C.C.P.A. (Customs) 231, T.D. 46762. In the *Mutual Lamp* case, this court ruled that square and disk-shaped pieces of onyx, polished on one face and the edges, were dutiable as "slabs" of onyx under paragraph 232(b), supra. Thus, *the only question here is whether the drilling of the hole in the center of each piece of onyx requires it to be classified under paragraph 232(d) rather than under* paragraph 232(b). (Emphasis added.)

In view of the above statement, it seems too clear for argument that there was no intention in *Atlas* of overruling the *Mutual* decision but, on the contrary, that the presence or absence of the hole was considered controlling. No holes are present in the instant merchandise and, accordingly, the *Mutual* decision should govern.

While the testimony indicates that 90 percent of the imported merchandise is sold to furniture manufacturers it is not shown that such manufacturers actually use all of what they buy in tables. There is evidence that the imported slabs may be used in other articles of fur-

niture such as pullman tops, bench tops and shelves. Moreover, the fact that all the merchandise of one importer is used for a particular purpose does not necessarily establish dedication to that use. The articles themselves bear marks of their special adaptation. *Worthington* v. *Robbins*, 138 U.S. 337.

The exact point at which a slab is so modified as to become a wholly or partly manufactured article is a matter which must be determined by the conditions of the article as imported and the circumstances of the particular case involved. In *Mutual* we decided that articles which are concededly the same in all material respects as those here were not such articles but were properly classifiable as slabs. The *Atlas* decision did not modify that holding and there is no new evidence here which would support a ruling that it was incorrect. Under the doctrine of *stare decisis*, therefore, it should be adhered to. *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678; and *United States* v. *Charles H. Demarest, Inc.*, 45 CCPA 109, C.A.D. 682, and cases there cited.

Since the majority opinion is contrary to that in the *Mutual* case, it would appear that the *Mutual* decision should be expressly overruled.

For the reasons given above and for those set forth in the judgment appealed from, I would *affirm*.